UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:07-CR-28 |
| | ) | |
| ANTONYO STEPHENS | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion to Suppress filed by the defendant, Antonyo Stephens ("Stephens"). For the reasons discussed in this Order, the motion to suppress is DENIED.

**PROCEDURAL BACKGROUND**

Stephens filed his motion to suppress on July 2, 2007.[1] The United States of America ("the government") filed a response in opposition to the motion on July 17, 2007. The court held a hearing on the motion on July 23, 2007, and directed the parties to file additional briefs. Stephens filed a memorandum on September 24, 2007, and the government filed a second opposition brief on October 9, 2007. Following a status conference on November 13, 2007, the court scheduled a further hearing on the motion to suppress. Soon thereafter, Stephens's counsel filed a motion to withdraw. The court converted the suppression hearing to a hearing on counsel's motion, which was granted. *See* Docket at 63. The court referred the case to the Federal Community Defender Program for appointment of new counsel. The court held yet another hearing on the motion to suppress on December 13, 2007, during which Stephens and the

---

[1] Stephens also filed a *pro se* motion to suppress on July 6, 2007 (Docket at 33). At the hearing held in this matter, the court informed Stephens that all filings should be submitted by his counsel and that his *pro se* motion would not be considered since his attorney had already filed a proper motion on his behalf.

government presented additional evidence. Docket at 67. At the conclusion of that hearing, the court directed both parties to file additional briefs on one specific issue. Also, the court granted Stephens's new attorney additional time in which to file any further pretrial motions. *Id*. The additional briefing concerning one specific aspect of the motion to suppress–that being Stephens's challenge to the search of his trash by law enforcement–was completed on January 11, 2008. The court then issued a Memorandum of Opinion and Order on February 26, 2008, which resolved the single issue of the search of Stephens's trash. Docket at 75. That aspect of the motion to suppress was denied. *Id*. On February 12, 2008, Stephens, through his newly appointed counsel, filed a second supplemental memorandum in support of his motion. Briefing on the issues raised in that supplemental filing was completed on March 20, 2008. Consequently, all the issues raised by Stephens in both his original motion to suppress and his supplemental pleadings are fully briefed and argued, and both sides have presented evidence on those issues.[2] The court will now turn to a discussion and analysis of the merits of the remaining issues.

---

[2] The pleadings relevant to the issues discussed in this Order are as follows: Motion to Suppress ("Motion to Suppress"), Docket at 27; Opposition to Defendant's Motion to Suppress ("Government's Response"), Docket at 38; Memorandum in Support of Defendant's Motion to Suppress ("Defendant's First Memorandum"), Docket at 51; Supplemental Opposition to Defendant's Motion to Suppress ("Government's Second Response"), Docket at 54; Second Supplemental Memorandum in Support of Defendant's Motion to Suppress ("Defendant's Second Supplement"), Docket at 74; Opposition to the Second Supplemental Memorandum in Support of Defendant's Motion to Suppress ("Government's Second Supplement"), Docket at 81; and Defendant's Reply to Government's Opposition to Second Supplemental Memorandum in Support of Defendant's Motion to Suppress ("Defendant's Reply"), Docket at 85. While the parties filed other briefs in this case also, they were limited to the issue of the search of defendant's trash and need not be discussed in this Order.

**DISCUSSION**

Stephens was charged by way of an Indictment with one count of distributing cocaine base ("crack") and one count of possession with intent to distribute crack. Indictment, Docket at 1. The charges were filed as a result of a raid by law enforcement on Stephens's residence on Plaza Drive in Fort Wayne. Motion to Suppress, p. 1. Police officers, armed with a search warrant, went to the premises on or about February 12, 2007. *Id*. The search warrant was issued following a "controlled buy" at the residence conducted less than three weeks previously. Defendant's First Memorandum, pp. 1-2. During the search, officers discovered drugs, and Stephens and a co-defendant (who has already pleaded guilty and did not join in this motion) were arrested and charged.

The events leading up to the execution of the search warrant were put in motion in July of 2006, when neighbors called police to complain of excessive traffic at the residence on Plaza Drive. Government's Second Response, pp. 4-5. The caller or callers provided police with information about a black male and a black female living or staying at the residence. *Id*. In January of 2007, Allen County Police Detective Jack Cain was contacted by a person identified as Confidential Informant ("C.I.") number 416. *Id*. The C.I. told Cain that he could purchase narcotics from a person known as "Quarterback," who lived at the Plaza Drive residence. *Id*. "[Detective] Cain met with C.I. 416 and showed him a photo array which contained a photo of Stephens. C.I. identified Stephens as 'Quarterback.'" *Id*. Detective Cain then enlisted C.I. 416 to conduct a controlled buy at the residence. *Id*. The controlled buy was conducted and C.I. 416 informed Detective Cain that C.I. had purchased "crack" cocaine from "Quarterback" inside the Plaza Drive residence. *Id*. Stephens points out that there was no audio or video recording of the

3

drug purchase, although he admits that "the residence was under surveillance by law enforcement."  *Id*.  "Approximately 2 weeks after the transaction with the C.I., law enforcement conducted a trash pick up and search from . . . Plaza Drive[.]" and discovered "several items of interest . . . ."  *Id*.  Based on the complaints from neighbors, the controlled buy, and the search of the trash, police sought and obtained the warrant to search the premises at Plaza Drive.

In his motion, Stephens challenges the validity of the search warrant, arguing that it "does not state facts sufficient to show probable cause[.]"; "is based upon uncorroborated hearsay information"; fails to support the "informant's credibility or . . . reliability . . . ."; "fails to establish that there was a controlled buy[.]"; and was based on information that was "stale and unreliable."  Motion to Suppress, pp. 1-2.[3]   Stephens asks the court to suppress all evidence seized during the search of the Plaza Drive residence.  He argues that "the search warrant which was issued for the search of his residence at 5421 Plaza Drive . . . was issued without probable cause.  Since probable cause was lacking, the search of his residence was a violation of Stephens's Fourth Amendment rights.  Therefore, under the exclusionary rule, the court should suppress all evidence illegally seized as a result of the search of the premises."  Defendant's Second Supplement, p. 1.

The purpose of the Fourth Amendment is protect citizens from unreasonable searches and seizures by the government.  *U.S. v. Ginglen*, 467 F.3d 1071, 1074 (7th Cir. 2006) (citing *Camara v. Mun. Court of City & County of S.F.,* 387 U.S. 523, 528 (1967)).  To determine

---

[3] As previously stated, Stephens also argued that law enforcement violated his Fourth Amendment rights by conducting a warrantless search of his trash and seizing certain items during that search.  The court ruled against Stephens on this issue in its Order issued on February 26, 2008.  Docket at 75.  Accordingly, the issue need not be addressed again in this Order.

4

whether a search is reasonable, the court looks at the totality of the circumstances. As the Seventh Circuit Court of Appeals recently explained:

> "The Fourth Amendment permits the search of a person's home only if there is probable cause to believe that the authorities will recover the items subject to seizure at the time they execute the warrant." *United States v. Newsom,* 402 F.3d 780, 782 (7th Cir.2005) (citation omitted). While there is no set definition for probable cause, it exists for purposes of a search "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696 (1996). Probable cause does not require an actual showing of criminal activity, but a probability or substantial chance that evidence of criminal activity will be found. *United States v. Sidwell,* 440 F.3d 865, 869 (7th Cir.2006) (citations omitted).
>
> "A magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *Newsom,* 402 F.3d at 782 (citations omitted). "The age of information contained in an affidavit is only one factor a judge considers, and it is less important when the criminal activity in question is apparently continuous." *United States v. Watzman,* 486 F.3d 1004, 1008 (7th Cir.2007). "Credibility of informants, nexus to the searched premises and to illegal activity, and the age of the information are all relevant considerations in this inquiry, but no single piece of information need satisfy every relevant consideration before we may consider it." *United States v. Wiley,* 475 F.3d 908, 915 (7th Cir.2007) (citation omitted).

*U.S. v. Doan*, WL 2247657 (7th Cir. Aug. 6, 2007) at * 3.

In its response to Stephens's motion, the government begins by arguing that Stephens "has not requested and is not entitled to a *Franks*[4] hearing" because his motion fails "to make a substantial preliminary showing that the [search warrant] affidavit contained some false material statements, the affiant made this false statement intentionally or with reckless disregard for the truth and that the false statement was necessary to support a finding of probable cause." *Id*., p. 1

---

[4] *See Franks v. Delaware*, 438 U.S. 154 (1978).

(citing *United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003)).  The government points out that in order to be entitled to a *Franks* hearing, a "defendant must 'offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts [or making a misstatement] in order to prove deliberate falsehood or reckless disregard.'" *Id.*, pp. 1-2 (quoting *Souffront*, 338 F.3d at 822).  The government notes that "'there is a presumption as to the validity of the affidavit supporting the search warrant which must be overcome.'" *Id.*, p. 2 (quoting *Beauchamp v. City of Noblesville, Indiana*, 320 F.3d 733, 743 (7th Cir. 2003)).  The government argues that in this case, Stephens has made "no attempt . . . to make a showing that would justify a *Franks* hearing." *Id*.

The court, after reviewing all of the defendant's pleadings in this case, agrees with the government that no further evidentiary hearing is necessary to resolve the remaining issues raised by Stephens's motion to suppress.  Stephens challenges the sufficiency of the affidavit that was used to obtain the search warrant in this case, and to some degree he challenges the accuracy and truthfulness of the facts stated therein, but he does not allege that the affidavit contains material misrepresentations–or lies–in order to support a finding of probable cause. Instead, he challenges the legitimacy of the facts presented in the affidavit by claiming that they are inadequate to give rise to probable cause for the issuance of a warrant.  Accordingly, the court deems it unnecessary to conduct a further evidentiary hearing on Stephens's motion and will instead resolve the remaining issues based on the pleadings submitted by the parties.[5]

---

[5] In any event, Stephens concedes in his final reply brief that "he has not requested a *Franks* hearing . . . ." Defendant's Reply, p. 1.

**1. Reliability of Information and Confidential Informant.**

Stephens argues that the warrant used to search his residence was invalid because it was "based upon uncorroborated hearsay information" and "fails to state evidentiary facts supporting the unnamed and unknown hearsay informant's credibility or the reliability of his information." Motion to Suppress, pp. 1-2. In his recent supplemental brief, Stephens contends that "[t]he first portion of Detective Earl McDonald's . . . Search Warrant Affidavit does not support probable cause for the issuance of a search warrant." Defendant's Second Supplement, p. 1. Stephens goes on to argue that the probable cause affidavit "is, at least in part, based upon the call from the anonymous neighbors to the police in July of 2006. The neighbors that supposedly relayed this information are never identified by name or for that matter by any other description except 'neighbors.' No mention is made of their credibility, of their knowledge, or of their ability to view the residence located at 5421 Plaza Drive." *Id*., p. 2. Stephens also challenges this information from the neighbors by noting that the neighbors identified the individual suspected of dealing drugs as being "in his early 20's, five foot six, and about 130 pounds." *Id*. Stephens argues that he is in his 30s and is between five feet ten and five feet eleven inches tall, and that he "weighs much more than 130 pounds." *Id*. Stephens also claims that in his probable cause affidavit, Detective McDonald misidentified an automobile allegedly used by the suspect at the Plaza Drive residence. Stephens also challenges a few other facts presented in the affidavit and attempts to argue that collectively they fail to raise an inference that Stephens was the individual suspected of dealing drugs from the Plaza Drive residence. *Id*., generally. Similarly, Stephens points to certain discrepancies in the confidential informant's description of Stephens. For example, Stephens states that "the C.I. describes Quarterback as 30 to 35 years old and five foot

7

ten and 170 pounds.  We know that Stephens is 29 years old, five foot eleven and 150 pounds. . . . [T]he one conclusion that can be drawn is that Quarterback is not Stephens." *Id*., p. 6.  As for the C.I.'s identification of Stephens in the photo array, Stephens argues that "the affidavit contains a dose of double hearsay.  It is [another detective] relaying something to Det. McDonald that was said by C.I. #416." *Id*., p. 8.  Finally, as stated previously, Stephens argues that the probable cause affidavit does not adequately establish the credibility or reliability of the confidential informant with regard to the controlled buy.

     Regarding the many alleged discrepancies Stephens argues appear in the probable cause affidavit, especially those concerning the physical description of Stephens himself, the government argues that "this is the type of hyper technical, unrealistic, impractical, non-common sense 'library approach' that case law cautions is not to be used[.]" to assess the validity of a probable cause affidavit.  Government's Second Supplement, p. 3.  The government maintains that "these descriptions, in real life, are similar enough to warrant the conclusion they might be describing the same person." *Id*.  More importantly, the government notes that a positive identification of Stephens as the alleged drug dealer is not necessary to support a finding of probable cause for a warrant to search the Plaza Drive residence.  Rather, "the affidavit . . . is not concerned with establishing probable cause to arrest Stephens, it is concerned with establishing probable cause to believe evidence of a crime will be located at a particular residence." *Id*.  The government's argument is well taken.  The discrepancies concerning the physical description of Stephens himself are woefully insufficient to challenge the veracity of the probable cause affidavit, especially as it pertained to a search of the Plaza Drive residence.

There are many more reasons why the affidavit used to obtain the search warrant in this case was sufficient. The "veracity and basis of knowledge of persons supplying hearsay information" is only one element to be considered by a magistrate issuing a search warrant. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In the present case, the probable cause affidavit specifically states that the confidential informant who provided information on Stephens "has provided [law enforcement] with information in the past that has proven to be reliable and credible." Government's Exhibit 1, Search Warrant Affidavit.[6] In addition, the informant identified Stephens from a photo array prepared by police. *Id*. The informant also identified Stephens's girlfriend (and later co-defendant) Tahitia Burnett from a similar photo array. *Id*. Then the informant, accompanied by police, conducted a controlled buy of crack cocaine from Stephens at his home on Plaza Drive. *Id*. The precise procedure used to conduct the controlled buy was explained in detail in the search warrant affidavit. *Id*. Therefore, Stephens's argument that the affidavit failed to establish probable cause for the issuance of a search warrant because it was based on uncorroborated hearsay is without merit. Not only does the affidavit state that this particular informant provided reliable information to police in the past, the informant's information about Stephens, Burnett, and the presence of drugs at their Plaza Drive residence was detailed and based on the informant's personal knowledge. It is also important to note, especially with regard to Stephens's allegation that the informant's information was uncorroborated, that the police were already familiar with allegations of drug activity at the Plaza Drive home, and that they knew Stephens and Burnett and were aware of the fact that they

---

[6] The search warrant affidavit at issue was admitted into evidence at the hearing held on December 13, 2007. It is also attached as an exhibit to Stephens's Second Supplemental Brief, Docket at 74.

both had criminal records for drug crimes. *Id*. The information provided by the informant actually bolstered the information the police already had about activity at the Plaza Drive home. Again, the police had received complaints from neighbors about suspicious activity at the Plaza Drive residence even before the informant offered information on Stephens. Once the police, together with the informant, conducted the controlled buy of crack cocaine from Stephens (whom the informant had identified both prior to and after the purchase), the informant's information was obviously accurate. The information provided by the informant corroborated the tips police had received from Stephens's neighbors and the information police already had on both Stephens and Burnett. The information provided by the informant was, in turn, corroborated by subsequent evidence obtained during the controlled buy and the search of Stephens's and Burnett's trash. For these reasons, Stephens's argument that the search warrant affidavit was insufficient because it was based on what he argues was "uncorroborated hearsay" is without merit.

### 2. "Staleness" of Information.

Stephens also argues that the information contained in the affidavit used to obtain the search warrant was too stale to support a finding of probable cause. Motion to Suppress, p. 2. Stephens bases this argument on the fact that there was "a six month lapse between the time of the anonymous complaints about the occupants of . . . Plaza Drive and the traffic at the residence and the time of the alleged controlled buy." Defendant's First Memorandum, p. 5. Stephens correctly states that the age of the information contained in a search warrant affidavit is "one factor" that a magistrate should consider when determining whether to issue a search warrant. *Id*. (citing *U.S. v. Lamon*, 930 F.2d 1183 (7th Cir. 1991)). However, his argument that the search

10

warrant affidavit in this case was based on stale information ignores the fact that the warrant was issued less than three weeks after the controlled buy was conducted by police and only four days after police uncovered evidence of drugs in Stephens's trash.[7]  The warrant was not based simply on months old complaints from neighbors.  It was based on many facts, such as the complaints, the controlled buy and simultaneous identification of Stephens by the confidential informant, and information about Stephens and Burnett that was already known to police.

Courts have explained that "[t]here is no brightline test for determining when information is stale . . . time factors must be examined in the context of a specific case and the nature of the crime under investigation."  *U.S. v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993).  As the U.S. Supreme Court stated in *Gates*, "[p]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully reduced to a neat set of legal rules."  *Gates*, 463 U.S. at 232.  Therefore, the fact that the police received complaints from Stephens's neighbors months before the search warrant was issued does not undermine the validity of the warrant.  The police had many other facts on which to base their request for a warrant.  Furthermore, the totality of the circumstances in this case made it eminently reasonable for police to assume that there was an ongoing drug enterprise being conducted in Stephens's Plaza Drive residence.  It was reasonable for the police to believe the probability that drugs and/or other evidence of drug activity would be found at the residence was high at the time they sought the search warrant. For all of these reasons, Stephens's motion to suppress must fail.

---

[7] The complaints from neighbors were received in July of 2006; the controlled buy was conducted on January 26, 2007; the search of Stephens's (and presumably also Burnett's) trash took place on February 8, 2007; the search warrant affidavit was signed on February 12, 2007, and the warrant was issued that same day.

11

## CONCLUSION

For the reasons discussed herein, the Motion to Suppress filed by the defendant, Antonyo Stephens, is DENIED.

Date: April 21, 2008.

    /s/   William C. Lee
        William C. Lee, Judge
        United States District Court
        Northern District of Indiana